IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gail G. Davis,  )<br>    )<br>         Plaintiff,  )<br>    )<br> vs.  )<br>    )<br>Michael J. Astrue,  )<br>Commissioner of Social Security,  )<br>    )<br>         Defendant.  )<br>    ) | Civil Action No. 6:07-0452-WMC<br><br>**O R D E R** |

This case is before the court for a final order pursuant to Local Rule 73.03, D.S.C., Title 28, United States Code, Section 636(b)(1)(B), and the order of the Honorable Terry L. Wooten, United States District Judge, filed September 21, 2007.

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for supplemental security income (SSI) benefits on June 2, 2004, alleging that she became unable to work on February 24, 2004. The application was denied initially and on reconsideration by the Social Security Administration. On January 11, 2006, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney and a vocational expert appeared on June 12, 2006, considered the case *de novo*, and on September 23, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The

administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on December 20, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant has not engaged in substantial gainful activity since February 24, 2004, the alleged onset date (20 CFR 415.920(b) and 416.971 *et seq.*).
>
> (2) The claimant has the following severe impairments: diabetes mellitus with peripheral neuropathy; hypertension; and late effects of post cerebral vascular disease (20 CFR 416.920(c)).
>
> (3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry items weighing 20 pounds occasionally and 10 pounds frequently and to stand, walk, and sit each for 6 hours in an 8-[hour] day with the following additional limitations: occasionally pushing and pulling with her upper extremities; occasionally pushing and pulling with her lower extremities; occasionally climbing, balancing, stooping, kneeling, crouching, crawling and reaching overhead; never climbing ladders, scaffolds, and ropes; never working around hazards; and having no requirement for visual acuity or fine dexterous demands.
>
> (5) The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> (6) The claimant was born on July 20, 1957 and was 46-years-old on the date the application was filed, which is defined as a younger individual age 45-49 (20 CFR 416.963).
>
> (7) The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

> (8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> (10) The claimant had not been under a "disability," as defined in the Social Security Act, since June 2, 2004 (20 CFR 416.920(g)), the date the application was filed.

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §416.905(a). To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R.

§416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

> a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff alleges she is disabled due to diabetes mellitus and associated peripheral neuropathy, hypertension and residual effects of cerebral vascular disease (Tr. 15, 90-92). She was 49 years of age as of the date of the Commissioner's final decision (Tr. 91). She has an eleventh-grade education, vocational training as a nursing assistant, and past work experience as a certified nursing assistant, a grocery store supervisor and a laborer (Tr. 143, 218).

The records of First Baptist Church of North Charleston Medical Clinic, North Charleston, South Carolina, including those of Dr. J. R. Freeman, between December 30, 2003, and January 25, 2006, revealed treatment with medication for diabetes mellitus and related neuropathy, hypertension and residual effects of possible stroke(s), including right-sided weakness; treatment with oral medication and medication injections for greater trochanter (the processes below the neck of the femur) bursitis; and assessment of complaints of decreased vision (Tr. 166-175, 177-180, 212-213). During this period, examinations revealed right cervical paraspinous muscle, trapezius, scapular, calf and greater trochanter bursa tenderness (Tr. 171-180); a warm right foot (Tr. 180); reduced, painful right arm range of motion (Tr. 171); reduced motor strength (Tr. 172, 180); weights ranging between 184 and 230 pounds (Tr. 171, 173, 175, 179), at 65 inches in height (Tr.

212); blood pressure readings ranging between 138/90 and 180/110 (Tr. 175, 177, 180); and a blood glucose level of 128 mg/dL (Tr. 179). The plaintiff denied any foot ulcers or other signs of diabetic foot symptoms, and reported normal left foot sensation (Tr. 213).

The plaintiff reported that she had experienced onset of right leg weakness in 1999 and right arm weakness in 2000 (Tr. 179), and that she had experienced decreased right eye vision for 17 years (Tr. 180). She also reported she had been laid off her employment (Tr. 179) and that she had resumed working (Tr. 171). She further reported that her self-monitored blood glucose levels ranged between 103 mg/dL (Tr. 173), and 204 mg/dL (Tr. 173). She additionally reported that she had been out of state and depleted medications eight months previously (Tr. 171), that she had depleted hypertension medications (Tr. 172), that she had depleted gabapentin (Neurontin)[1] (Tr. 172), that she had depleted medications a week previously (Tr. 172), that she had depleted insulin a week previously (Tr. 177), that she had depleted hypertension medication four days previously (Tr. 175), and that she was taking another's insulin (Tr. 180). She also reported that gabapentin was helpful for pain, diabetic neuropathy and dysesthesias (impairment of any sense, especially touch; an unpleasant abnormal sensation produced by normal stimuli) (Tr. 172, 174-175, 177), and that she experienced increased right upper extremity dysesthesias since depleting gabapentin (Tr. 172).

It was determined that the etiology of the plaintiff's right visual decrease was unknown (Tr. 180). It was noted that the plaintiff was not totally compliant with treatment (Tr. 173), and that she failed to appear for a scheduled appointment (Tr. 171). Medications were dispensed to the plaintiff (Tr. 177), and assistance with medication acquisition provided (Tr. 174). Dr. Freeman stated that he believed the plaintiff's main symptom of leg

---

[1] An anticonvulsant medication used in treatment of neuralgia. *See* AHFS Drug Information (2007), available on Stat!Ref Library CD-ROM (Third Qtr. 2007) (AHFS).

weakness resulted from a stroke (Tr. 175) and that he believed she was totally permanently disabled (Tr. 172).

Dr. John G. Gastright, a consultative physician, examined the plaintiff on December 2, 2004. The plaintiff reported a history of persistent right-sided weakness she had been advised was attributable to small strokes based on laboratory blood tests, but which Dr. Gastright noted had not been confirmed with magnetic resonance imaging (MRI) or computerized tomography (CT) scan. She also reported a history of diabetes mellitus, at one time insulin-dependent but currently controlled with oral medication and diet, with blood glucose levels "in the 100's." She further reported visual decrease corrected with contact lenses or glasses (Tr. 193-96).

Examination revealed a blood pressure reading of 140/90; a weight of 224 pounds at 64 inches in height; equal, round, reactive pupils; normal cranial nerve functioning; normal facial sensation and symmetry; visual acuity of 20/40 in the right eye and 20/50 in the left eye; normal left upper extremity inspection, including normal ranges of motion; normal right upper extremity inspection, including normal ranges of motion and the ability to perform gross manipulation with the right hand, with the exception of "some" right arm weakness; normal left lower extremity strength; normal right lower extremity inspection, including normal ranges of motion, with the exception of right lower extremity weakness; normal deep tendon reflexes; normal sensation; and a normal gait and the ability to ambulate without an assistive device. Dr. Gastright concluded that the plaintiff's history was consistent with cerebrovascular disease with a small infarct causing right-sided weakness and noninsulin-dependent diabetes mellitus (Tr. 195-97).

On February 22, 2005, a State agency physician indicated that the plaintiff retained the physical residual functional capacity (RFC) to lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit six hours; push/pull within her lifting capacity; balance frequently; climb, stoop, kneel, crouch and crawl occasionally; and

perform work requiring no more than limited right upper fine and gross manipulation with the right upper extremity; and that she had no visual, communicative, environmental, or other manipulative limitations (Tr. 185-189).

In a statement dated April 19, 2005, the plaintiff reported that she took Lipitor,[2] "Atenol" (possibly Atenolol[3]), gabapentin/Neurontin, and aspirin (Tr. 127).

In a statement dated July 15, 2005, the plaintiff reported that she cared for her own personal needs with effort, performed limited household cleaning and other chores, shopped occasionally, and attended church services. She also reported that she was left hand-dominant and that she ambulated with a cane (Tr. 131-37).

The plaintiff was examined on August 28, 2005, with complaints of upper extremity pain. Examination revealed decreased right upper extremity motor strength and reduced sensory functioning on the right, but also normal deep tendon reflexes and normal left upper extremity motor strength (Tr. 198-99).

Records of Franklin C. Fetter Family Health Center, Inc., between October 9 and November 15, 2005, revealed assessment of complaints of bilateral arm pain and numbness, right-sided pain and diabetic neuropathy. During this period, the plaintiff reported a history of diabetes mellitus and a cerebral vascular accident. Examinations revealed right finger swelling, weight ranging between 193 pounds and 202 pounds, and blood pressure readings ranging between 126/80 and 150/110 (Tr. 200-03).

On December 20, 2005, Dr. Joseph Gonzalez, a State agency physician, indicated that the plaintiff retained the physical RFC to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit six hours; climb ramps and stairs, balance, stoop, kneel, crouch, crawl and reach overhead with the right arm occasionally; and perform

---

[2] An antihyperlipidemic medication. *See* AHFS.

[3] An antihypertension medication. *See* AHFS.

work not requiring heavy pushing/pulling with the right upper extremity or working around hazards; and that she had no visual, communicative, environmental or other manipulative limitations (Tr. 205-208).

In a statement dated January 5, 2006, the plaintiff reported that she took hydrochlorothiazide,[4] Neurontin, and aspirin (Tr. 112).

In an undated statement, the plaintiff reported that she took prednisone,[5] Neurontin, Lipitor, Atenolol and aspirin (Tr. 23).

At her hearing on June 12, 2006, the plaintiff testified that she experienced right-sided weakness and numbness (Tr. 219-220, 224) and long-term diabetes, currently controlled, that affected one of her eyes (Tr. 224, 228, 230). She also testified that she wore glasses for near vision only (Tr. 229), was left-hand dominant (Tr. 221), and was treated for hypertension which "bother[ed her]" only when her blood glucose level was elevated (Tr. 224, 230). She further testified that she was comfortable with her weight and that it did not limit her in any way (Tr. 227). She additionally testified that she attended a free medal clinic (Tr. 225). She also testified that she performed household cleaning and other chores (Tr. 225-227, 230-231), prepared simple meals (Tr. 226, 232), and attended church services and choir practices and sang in the choir (Tr. 231-232). She further testified that she had to work briefly after her application for SSI to pay bills (Tr. 218, 221).

Robert E. Brabham, Ph.D., a vocational expert, testified that, considering an individual of the plaintiff's age, education, past relevant work experience, and RFC to lift 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit six hours in an eight-hour day; climb, balance, stoop, kneel, crouch, crawl, push/pull with the right extremities, and handle/finger with the right upper extremity occasionally; and perform work not

---

[4] A diuretic medication used in treatment of hypertension. *See* AHFS.

[5] A corticosteroid medication. *See* AHFS.

9

requiring climbing ladders, scaffolds, and ropes, working around hazards, or significant visual acuity, jobs existed in the regional and national economies which such an individual could perform. He cited packer, machine tender and security guard as examples, and he provided the incidence of these jobs in the regional and national economies (Tr. 236-39).

## **ANALYSIS**

The plaintiff alleges disability commencing February 24, 2004, as a result of diabetes mellitus and associated peripheral neuropathy, hypertension, and residual effects of cerebral vascular disease. The plaintiff was 49 years old on the date of the ALJ's decision. She has an eleventh-grade education, vocational training as a nursing assistant and past work experience as a certified nursing assistant, a grocery store supervisor, and a laborer. The ALJ found that the plaintiff had the RFC to do a limited range of light work with the following limitations: occasional pushing and pulling with her upper and lower extremities; occasional climbing, balancing, stooping, kneeling, crouching, crawling, and reaching overhead; never climbing ladders, scaffolds, and ropes; never working around hazards; and having no requirement for visual acuity or fine dexterous demands (Tr. 16).

The plaintiff argues that the ALJ erred by (1) failing to perform a proper listing analysis; (2) failing to consider her combined impairments; (3) failing to properly consider the opinion of her treating physician; and (4) failing to properly consider her credibility.

*Listing Analysis*

The plaintiff first argues that the ALJ failed to perform a proper listing analysis. The regulations state that upon a showing of a listed impairment of sufficient duration, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d). A listing analysis includes identifying the relevant listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. *See Cook v.*

10

*Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, C.A. No. WMN-99-3696, 2000 WL 1916316, *9 (D. Md. 2000) (finding that where there is "ample factual support in the record" for a particular listing, the ALJ should perform a listing analysis).

> In this case, the ALJ found as follows:
>
> The claimant's diabetes mellitus with peripheral neuropathy, hypertension, and late effects of post cerebral vascular disease have more than a minimal effect on the claimant's ability to perform work-related activities and are severe in nature.
>
> The claimant's combination of impairments fails to meet or equal the requirements of 4.03 [Hypertensive Cardiovascular Disease], due to a failure to establish chronic limitations by objective testing, 9.08 [Diabetes Mellitus], due to a failure to establish significant disorganization of motor dysfunction in two extremities, acidosis, or retinopathy, and 11.04 [Central Nervous System Vascular Accident], due to a failure to establish aphasia or a disturbance in either gait or gross motor skills.

(Tr. 15-16).

The plaintiff argues that she "had longstanding difficulties with . . . symptoms as identified in Listing 9.08 Diabetes Mellitus and Listing 11.04 Central Nervous System Vascular Accident" and that the ALJ's analysis with regard to these listings "falls dreadfully short of what is required by law. The ALJ did not compare each of the listed criteria to the evidence of the claimant's symptoms, as per the applicable law provided in this section" (pl. brief 6). This court agrees. Upon remand, the ALJ is instructed to perform a listings analysis for Listings 9.08 and 11.04 in accordance with the above-cited law.

***Combined Impairments***

The plaintiff next argues that the ALJ failed to consider whether her combined impairments are of equal medical significance to a listed impairment. In a disability case,

11

the combined effect of all the claimant's impairments must be considered without regard to whether any such impairment if considered separately would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect of the various impairments on the claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Upon remand, the ALJ is instructed to consider the plaintiff's impairments, both severe and non-severe, in combination as set forth above in determining the cumulative effect of the impairments on her ability to work.

***Treating Physician***

The plaintiff next argues the ALJ erred in failing to properly consider the opinion of Dr. Freeman, her treating physician. The plaintiff first sought medical treatment from Dr. Freeman on December 30, 2003. Over the next seven months, Dr. Freeman examined the plaintiff in his office on numerous occasions. Dr. Freeman opined that the plaintiff's medical difficulties were due to suspected diabetic radiculopathy and post stroke neuralgia (Tr. 179). On July 27, 2004, Dr. Freeman opined that the plaintiff was "totally and permanently disabled" (Tr. 172).

The ALJ afforded Dr. Freeman's opinion "little weight," finding that it was unsupported by the doctor's treatment notes and was not a medical opinion. Alternatively, the ALJ gave "some weight" to the findings of Dr. Gastright, the consultative exam doctor (Tr. 17). The plaintiff argues that Dr. Freeman's notes were detailed and supportive of his

12

opinion as they detailed the difficulties the plaintiff had with her right side upper and lower extremities.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still

> entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

This court finds that the ALJ erred in his consideration of Dr. Freeman's opinion. Upon remand, the ALJ is instructed to consider and evaluate Dr. Freeman's opinion in accordance with the above-cited law.

***Credibility***

Lastly, the plaintiff argues that the ALJ failed to conduct a proper credibility analysis. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's

14

decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."  SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

   (1)   the individual's daily activities;

   (2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;

   (3)   factors that precipitate and aggravate the symptoms;

   (4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

   (5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

   (6)   any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

   (7)   any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

In this case, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms . . ." (Tr. 17).  He went on to find that the plaintiff's complaints were not entirely credible and gave her testimony little weight. In support of his finding, the ALJ noted that the plaintiff did not stop working due to pain but rather because she was laid off, that her complaints of inability to use her hands were inconsistent with medical evidence showing she had 5/5 grip

strength in her left hand and 2/3 grip strength in her right hand, and that her activities of daily living were inconsistent with a complete inability to work.  This court finds that the ALJ appropriately evaluated and supported his finding as to the plaintiff's credibility.

## **CONCLUSION**

Based upon the foregoing, the Commissioner's decision is reversed under sentence four of 42 U.S.C. §405(g) with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

January 14, 2008

Greenville, South Carolina